## MATTER OF FLEUTI

### In Deportation Proceedings

### A-8382428

*Decided by Board December 27, 1965*

A finding that respondent was a homosexual at the time of entry in October 1952 and thus deportable under section 241(a)(1), Immigration and Nationality Act, as one excludable at entry under section 3, Act of February 5, 1917, as a person of constitutional psychopathic inferiority is not established where the evidence of record reveals that although respondent had an inclination toward homosexuality and had engaged in homosexual relations prior to entry, it appears that he can control the inclination and that he had it under control before he entered, not having engaged in homosexual relations during the period December 1951—October 1952, immediately prior to his entry.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry in 1959 as alien who has been convicted of a crime involving moral turpitude: sex perversion (1956).

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry in 1959 under section 212(a)(4) of the Act, as an alien of psychopathic personality.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry in October 1952 under section 3 of the Act of February 5, 1917 as a person of constitutional psychopathic inferiority.

ON BEHALF OF RESPONDENT:
Hiram W. Kwan, Esquire
1011 North Broadway
Los Angeles, Calif. 90012
(Oral argument)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney
(Oral argument)

William S. Howell
Trial Attorney
(Brief filed)

In this Service appeal from the order of the special inquiry officer officer finding respondent deportable on the second lodged charge and granting suspension of deportation, the Service contends that suspension of deportation should not have been granted. The only charge we

need consider as a result of the issues raised is the second lodged charge. We find respondent is not deportable and we shall terminate proceedings.

The facts, including the lengthy history of the case, have been fully stated by the special inquiry officer. Briefly, respondent, a 53-year-old single male, a native and citizen of Switzerland, has, except for a three-hour visit in 1959 to Mexico, resided continuously in the United States since his admission for permanent residence on October 9, 1952. He is charged by the Service with having been excludable at the time of his admission in 1952 as a person of constitutional psychopathic inferiority because he was then a homosexual. Counsel contends the evidence does not establish that respondent was a person of constitutional psychopathic inferiority or a homosexual.

Under the immigration laws, a person of constitutional psychopathic inferiority may be one whose history reveals a pattern of anti-social conduct or conflict with authority or it may be one who is a sex pervert such as a homosexual (*Matter of LaRochelle*, A-7128195, December 1, 1965, Int. Dec. #1538; *Matter of Lavoie*, Int. Dec. #1481; *Matter of R—*, 9 I. & N. Dec. 393; *Matter of S—*, 8 I. & N. Dec. 409; *Matter of P—*, 7 I. & N. Dec. 258).

On this record it cannot be said that the respondent is a person of constitutional psychopathic inferiority by reason of his anti-social behavior or conflict with authority. The record reveals that the respondent has been employed in a responsible position for the past 11 years by one employer who thinks very highly of him, that he has a history of devotion to family and interest in others, that he has sought psychiatric help and has his problem under control, that apart from three arrests resulting in convictions on two occasions, he has not been in trouble with the authorities, that he is well regarded by people who have known him over an extended period of time, and that a Service investigation failed to reveal derogatory information other than that concerning his arrests. The question then is whether the record establishes that respondent was a homosexual at time of his entry in 1952 and therefore then excludable as a person of constitutional psychopathic inferiority; we conclude that it does not.

A statement taken from the respondent in 1959 (Ex. 6) reveals that he had no homosexual interests while in his teens; that he was about 24 years of age when he began having sexual relations with male friends, that these relations occurred once a month or less often, that he had no arrests outside the United States, and that in the period immediately preceding his entry into the United States (December 1951–October 1952 when he lived in Canada) he had no homosexual relations.

309

The respondent was convicted on August 27, 1953 for disorderly conduct (lewd and dissolute person), and on March 16, 1956 under section 288(a) of the Penal Code for committing a homosexual act. An arrest in 1958 (the charge was dismissed) is explained by respondent as arising out of an accusation that he had broken a light bulb (pp. 136, 138).

A Government physician with some experience in psychiatric matters but without formal training in the field testified (on the basis of an examination made of the respondent in 1959, consideration of his arrest record and his admissions concerning homosexuality) that the respondent was a sexual deviate at the time of his entry in 1952 and therefore then properly classifiable under Public Health Service regulations as a person of constitutional psychopathic inferiority (pp. 93–95). (The witness used not the regulations in effect in 1952 but those in effect at the time of the hearing (p. 89).)

Respondent's psychiatrist in a letter dated August 10, 1959 (Ex. 8) stated that the diagnosis in respondent's case was that of "sexual deviation, homosexuality, now under control." The letter pointed out that respondent did not frequent homosexual hang-outs, had no evident interest in youths, manifested no irresponsible trends, and had his main social contacts with respected members of the community. The psychiatrist who has counselled the respondent for about 30 hours since May 1959 testified at the hearing that with knowledge of the respondent's arrest record and as a result of his observation and consideration of information obtained from the attorneys of both the respondent and his employer he had concluded that while the respondent in the past had demonstrated a greater than average capacity for interests in homosexual relations, he was not a sociopath, a psychopath or a person of constitutional psychopathic inferiority (p. 108). The witness testified that respondent had stated to him that he had engaged in heterosexual relations up to 1959 (p. 112) and that he had found respondent's sexual drive was not strong.

We do not believe that the Service has borne the burden of establishing that respondent was a homosexual at the time of his entry in 1952. In view of respondent's candor there is no reason to question his testimony; this testimony and the statements made by his witness reveal that he had engaged in homosexual relations prior to his entry, but that he had also engaged in heterosexual relationships, that he does not now engage in such relationships, and most important of all; that during the rather lengthy period immediately prior to his entry, he had not engaged in homosexual relations. While the record reveals respondent had an inclination toward homosexuality, it appears to be one respondent can control and that he had it under control before he entered. Therefore, we cannot find that the record establishes that he

was a homosexual at the time of that entry. The second lodged charge is not sustained and we shall therefore terminate proceedings.

In view of our action, contentions of the Service addressed to the issue of discretionary relief need not be discussed except that we may state our agreement with the views of the special inquiry officer on this subject.

**ORDER:** It is ordered that the Service appeal be and the same is hereby dismissed.

*It is further ordered* that deportation proceedings be terminated.